# EXHIBIT A

| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER<br>2283CV00329 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Brandon Travis vs. Hub Parking Technology USA, Inc. | | Robert S. Creedon, Jr., Clerk of Courts |
| To:<br>Hub Parking Technology USA, Inc. | | COURT NAME & ADDRESS<br>Plymouth County Superior Court - Brockton<br>72 Belmont Street<br>Brockton, MA 02301 |

To the above named defendant(s):

You are hereby summoned and required to serve upon:

**John Davis, Esq.**
**Davis and Davis, P.C.**
**352 Park St**
**Suite 202**
**North Reading, MA 01864**

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Brockton either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for Equitable Relief has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

**Date:** 05/18/2022

**Time:** 02:00 PM

**Event:** Motion Hearing

**Session Location:** Civil A Brockton /

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>05/09/2022 | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>Hon. Heidi E Brieger | ASSOCIATE JUSTICE<br>Hon. Daniel J. O'Shea | ASSISTANT CLERK<br>X |
|---|---|---|---|

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X

A True Copy Attest
8-11-8

Date/Time Printed: 05-09-2022 10:53:16 | SCV027r 04/2217

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPT.
CIVIL ACTION NO.: _____

---

BRANDON TRAVIS,
    Plaintiff,

v.

HUB PARKING TECHNOLOGY USA INC.
    Defendant.

---

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Brandon Travis ("Mr. Travis" or "Plaintiff"), in support of his application for equitable and monetary relief, alleges as follows upon personal knowledge as to his acts, and upon information and belief as to all other matters as follows:

### Introduction

Hub Parking Technology USA Inc. ("the Company" or "the Defendant") hired Mr. Travis as a Field Service Supervisor in early February 2022 and his official start date was February 21st. Mr. Travis' fiancé gave birth to their son on March 28, 2022. After having conversations with both HR and his boss regarding his plans for paternity leave, Mr. Travis felt pressured into taking a one week unpaid leave of absence instead of twelve (12) weeks of paid leave pursuant to the PFML. Mr. Travis agreed to return to work after one week provided that he be allowed to work

remotely because his fiancé was delivering by C-section and needed help after surgery, which his boss approved.

During the one week of unpaid leave after the birth of the baby, the Company tried contacting Mr. Travis with work related questions and issues. After he returned to work, his boss pressured him into not working remotely, despite his prior assurances that this arrangement was acceptable. When Mr. Travis expressed frustration that his boss was not honoring his commitment, after being pressured to forego PFML leave, his boss terminated him on April 20, 2022.

In mid-March 2022, Mr. Travis requested the Company's EIN from Melissa Dieghan, an HR employee, because the EIN is required for the PFML application. After Mr. Travis communicated with his boss, Chuck Mathieson, about taking a leave of absence, Mr. Travis inferred that his job, which he just started a month ago, would be in jeopardy. Accordingly, Mr. Travis did not file the PFML application and told Mr. Mathieson that he would only take one week of unpaid leave versus twelve weeks of paid leave pursuant to the PFML, but wanted to work remotely after his one week leave.

Mr. Travis returned to work after a one week unpaid leave. The Company was short-staffed. Mr. Mathieson made it clear that he did not approve of Mr. Travis's decision to take a week off and he also did not approve of him working remotely. Mr. Travis was then fired on April 20th.

<u>Parties</u>

1. Mr. Travis is an individual residing in Whitman, Plymouth County, Massachusetts.

2

2. The Company maintains an office location at 761 Commonwealth Drive, #204, Warrendale, Allegheny County, Pennsylvania.

### Jurisdiction

3. This Court has jurisdiction over this matter pursuant to MGL c. 175M, § 9(d).

### Facts

4. The Company is a leading specialist in parking solutions.

5. Mr. Travis was hired as a Field Service Supervisor in early February 2022 and his first day on the job was February 21st.

6. Mr. Travis was able to satisfactorily perform all of the essential job functions.  Mr. Travis had worked similar positions for prior employers and he was well qualified for the position.

7. Mr. Travis' fiancé was scheduled to deliver a baby by C-section on Monday, March 28th.

8. His fiancé had applied for and was approved for PFML.

9. Mr. Travis contacted HR employee Melissa Dieghan, who is not based in Massachusetts.

10. Mr. Travis wanted to speak to a Company employee in HR for two reasons: First, to figure out the most efficient way to have their new baby added to their insurance policies, and second, to inquire about taking PFML.

11. Mr. Travis' conversation with Ms. Dieghan was very brief.  It became quickly clear to Mr. Travis that Ms. Dieghan had either very little or no experience with the PFML.

12. Mr. Travis explained that he could not complete his PFML application online because his name was not in the system with the PFML department, which, on information and belief, is a reflection of Mr. Travis being a relatively new employee at the Company.

13. When Mr. Travis spoke with someone at the PFML agency, he was told that he needed to get the Company's EIN and that he would need a copy of the birth certificate after the baby was born.

14. Mr. Travis requested that Ms. Dieghan provide him with the Company's EIN, which is necessary for an employee to fill out the PFML application. Mr. Travis communicated that he would submit the PFML application after the baby was born so that he could provide a birth certificate.

15. Ms. Dieghan responded to Mr. Travis' request by providing the Company's EIN.

16. Based upon the fact that Ms. Dieghan seemingly had no experience with the PFML, Mr. Travis then approached his boss, Mr. Matheison, for advice on taking PFML.

17. Mr. Mathieson said that it was a 'bad time' for Mr. Travis to take a leave of absence because the Company was 'short-staffed in the New England region'.

18. On information and belief, the New England area is short-staffed in terms of technicians and the Company has been actively trying to recruit technicians throughout 2022.

19. Mr. Mathieson also commented that Mr. Travis had just joined the Company, suggesting that he did not deserve to take an extended paid leave of absence.

20. Mr. Travis inferred that if he took 12 weeks of PFML, his job would be in jeopardy.

21. Mr. Travis told Mr Mathieson that instead of taking 12 weeks off, he would just take 1 week off, provided that he be allowed to work remotely thereafter to help his fiancé because she was recovering from a C-section. Mr. Mathieson stated that he had no objection to Mr. Travis working from home for a while and they would reconnect at a later date to figure out when Mr. Travis would be able participate in travel to job sites.

4

22. Mr. Mathieson told Mr. Travis that if there were no technicians available to perform a service call when Mr. Travis returned from his one week of leave, it was acceptable for his to schedule the service call the following week, assuming that technicians were available.

23. Mr. Matheison, who is not based in Massachusetts, was in Massachusetts the week before Mr. Travis's baby was born.  Mr. Mathieson was supposed to be training Mr. Travis, but they basically spent a short amount of time together at breakfast or lunch.

24. Mr. Mathieson kept trying to assign Mr. Travis assignments for the next week, and Mr. Travis kept explaining that he was taking the next week off because his fiancé was having a baby by C-section on Monday, March 28th.

25. Mr. Mathieson was visibly frustrated that Mr. Travis was taking an entire week off from work.

26. Mr. Travis' fiancé gave birth via C-section on Monday, March 28th.

27. On information and belief, the Company did not transfer anyone to cover the New England territory while Mr. Travis was on his one week leave of absence.

28. On information and belief, Mr. Mathieson did not cover Mr. Travis' work related phone calls or emails while he was on his one week leave of absence.

29. Iliya Kolev ("Mr. Kolev"), a Company Account Manager, called Mr. Travis' work cell phone the same day that his fiancé delivered the baby on March 28th.

30. Mr. Kolev called Mr. Travis on his personal cell phone on March 29th, the day after the baby was born, while Mr. Travis was on his one week leave of absence.

31. Mr. Kolev had Mr. Travis' personal cell phone number because Mr. Travis had to use his personal cell phone when he first started because the Company did not have a business cell phone ready for him when he started.

32. Mr. Mathieson kept assigning Mr. Travis work assignments despite the fact that he was out on a one week leave of absence.

33. Mr. Travis returned to work on April 4, 2022.

34. Mr. Travis was inundated with a backlog because Mr. Mathieson had assigned work for him while he was on his one week leave of absence.

35. Even though Mr. Mathieson had agreed to allow Mr. Travis to work remotely, he began to assign Mr. Travis jobs that required that he travel.

36. When Mr. Travis reminded Mr. Mathieson that he was supposed to be working remotely while his fiancé recovered from the C-section, Mr. Mathieson angrily responded that Mr. Travis was not acting like a dedicated employee who cared about the customers.

37. Mr. Travis was terminated on April 20th, just 16 days after he returned from his one week unpaid leave of absence.

38. Mr. Travis' PFML application was filed on April 20th and is currently pending.

### CAUSES OF ACTION[1]

### First Cause of Action. – Violation of M.G.L. c. 175M, §9.

39. The Plaintiff incorporates all prior paragraphs as if fully stated herein.

40. This is a cause of action by the Plaintiff against the Defendant for violation of the PFML.

---

[1] Mr. Penta has filed a MCAD Charge of Discrimination.  Mr. Penta will be amending this Complaint to add his Chapter 151B claims after the MCAD grants the withdrawal form.

41. The Plaintiff was entitled to a paid leave of absence for 12 weeks and he was entitled to his same or a substantially similar position upon his return.

42. The Plaintiff was pressured into only take one week of unpaid leave.

43. The Plaintiff was pressured to work during his one week of unpaid leave.

44. The Plaintiff was not allowed to work remotely, as promised, after his one week of unpaid leave.

45. The Plaintiff complained that the Company was ignoring his rights and he was fired.

46. But for the Plaintiff seeking to exercise his PFML rights, he would not have been fired.

### Prayers for Relief

WHEREFORE, the Plaintiff, Brandon Travis, prays that this Honorable Court:

I.   Enter judgment against the defendant for violation of the PFML;

II.  Issue an Order requiring that Defendant reinstate the Plaintiff to the same or equivalent position;

III. Order the Defendant to pay the Plaintiff back wages from the date of termination to the date he is reinstated;

IV.  Enter an award that provides for treble damages, reasonable attorney's fees, costs, interest;

V.   Grant such other relief as this Court deems just and proper.

DATED:  May 6, 2022

Respectfully submitted,
The Plaintiff,
By his attorney,

John W. Davis (BBO #648399)
Davis & Davis, P.C.
352 Park Street
North Reading, MA 01864
(978) 248-8750
jdavis@davisanddavispc.com

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | |
|---|---|
| PLAINTIFF(S): Brandon Travis | COUNTY |
| ADDRESS: 45 Wright Street | **Plymouth** |
| Weymouth, MA 02190 | DEFENDANT(S): Hub Parking Technology USA, Inc. |
| ATTORNEY: John W. Davis | |
| ADDRESS: 352 Park Street, Suite 202 | ADDRESS: 761 Commonwealth Drive, #204 |
| North Reading, MA 01864 | Warrendale, Allegheny County, Pennsylvania |
| BBO: 648399 | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99 | Other Tortious Action | F | ☐ YES   ☒ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO          Is this a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................................................................... $
  2. Total doctor expenses .................................................................................................. $
  3. Total chiropractic expenses ......................................................................................... $
  4. Total physical therapy expenses ................................................................................. $
  5. Total other expenses (describe below) ....................................................................... $
                                                                                    Subtotal (A): $

B. Documented lost wages and compensation to date ....................................................... $
C. Documented property damages to date ......................................................................... $
D. Reasonably anticipated future medical and hospital expenses ..................................... $
E. Reasonably anticipated lost wages ............................................................................... $
F. Other documented items of damages (describe below) ................................................. $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                        TOTAL (A-F): $ 75,000.00

### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

                                                                        TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X _____   Date: 5/6/22

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

N/A

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 5/6/22

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPT.
CIVIL ACTION NO.: _____

---

)
BRANDON TRAVIS,                )
     Plaintiff,                )
)
v.                                             )
)
HUB PARKING TECHNOLOGY USA INC.    )
     Defendant.                )
)

---

### PLAINTIFF'S EMERGENCY MOTION  FOR EQUITABLE RELIEF
### BASED UPON DEFENDANT'S VIOLATION OF PFML, MGL. 175M, § 9(d)

Plaintiff Brandon Travis ("Mr. Travis") moves this Court to issue an Order requiring that

the Defendant immediately reinstate Mr. Travis to the same or substantially similar position from

which he was terminated based upon the Defendant's violation of the PFML, MGL c. 175M, §

9(d).  In support of this emergency motion, the Plaintiff incorporates the attached

Memorandum of Law and Affidavit of Brandon Travis.

DATED:  May 6, 2022

                         Respectfully submitted,
                         The Plaintiff,
                         By his attorney,

                         John W. Davis (BBO #648399)
                         Davis & Davis, P.C.
                         352 Park Street
                         North Reading, MA 01864
                         (978) 248-8750
                         jdavis@davisanddavispc.com

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPT.
CIVIL ACTION NO.: _____

BRANDON TRAVIS,
      Plaintiff,

v.

HUB PARKING TECHNOLOGY USA INC.
      Defendant.

)
)
)
)
)
)
)
)
)

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR EQUITABLE RELIEF BASED UPON DEFENDANT'S VIOLATION OF PFML, MGL. 175M, § 9(d)

Pursuant to MGL c. 175M, § 9(d) and Mass.R.Civ.P. 65, Plaintiff Brandon Travis ("Mr. Travis" or "Plaintiff") moves this Court to issue an Order requiring that the Defendant Hub Parking Technology USA Inc. ("the Company" or "Defendant") immediately reinstate Mr. Travis to the same or substantially similar position from which he was terminated based upon the Defendant's violation of the PFML and to order the Defendant to forthwith return all of Mr. Travis personal affects.   In support of this emergency motion, the Plaintiff incorporates the attached Memorandum of Law and Affidavit of Matthew Gibbs.

## STATEMENT OF FACTS

Mr. Travis was hired as a Field Service Supervisor in early February 2022 and his first day on the job was February 21st. Mr. Travis was able to satisfactorily perform all of the essential job functions.   Mr. Travis had worked similar positions for prior employers and he was well qualified for the position.

Mr. Travis' fiancé was scheduled to deliver a baby by C-section on Monday, March 28th. His fiancé had applied for and was approved for PFML. Mr. Travis contacted HR employee Melissa Dieghan, who is not based in Massachusetts. Mr. Travis wanted to speak to a Company employee in HR for two reasons: First, to figure out the most efficient way to have their new baby added to their insurance policies, and second, to inquire about taking PFML.

Mr. Travis' conversation with Ms. Dieghan was very brief. It became quickly clear to Mr. Travis that Ms. Dieghan had either very little or no experience with the PFML. Mr. Travis explained that he could not complete his PFML application online because his name was not in the system with the PFML department, which, on information and belief, is a reflection of Mr. Travis being a relatively new employee at the Company. When Mr. Travis spoke with someone at the PFML agency, he was told that he needed to get the Company's EIN and that he would need a copy of the birth certificate after the baby was born. Mr. Travis requested that Ms. Dieghan provide him with the Company's EIN, which is necessary for an employee to fill out the PFML application. Mr. Travis communicated that he would submit the PFML application after the baby was born so that he could provide a birth certificate. Ms. Dieghan responded to Mr. Travis' request by providing the Company's EIN.

Based upon the fact that Ms. Dieghan seemingly had no experience with the PFML, Mr. Travis then approached his boss, Mr. Matheison, for advice on taking PFML. Mr. Mathieson said that it was a 'bad time' for Mr. Travis to take a leave of absence because the Company was 'short-staffed in the New England region'. On information and belief, the New England area is short-staffed in terms of technicians and the Company has been actively trying to recruit technicians throughout 2022. Mr. Mathieson also commented that Mr. Travis had just joined

the Company, suggesting that he did not deserve to take an extended paid leave of absence.  Mr.

Travis inferred that if he took 12 weeks of PFML, his job would be in jeopardy.

Mr. Travis told Mr. Mathieson that instead of taking 12 weeks off, he would just take 1

week off, provided that he be allowed to work remotely thereafter to help his fiancé because she

was recovering from a C-section.  Mr. Mathieson stated that he had no objection to Mr. Travis

working from home for a while and they would reconnect at a later date to figure out when Mr.

Travis would be able participate in travel to job sites.  Mr. Mathieson told Mr. Travis that if there

were no technicians available to perform a service call when Mr. Travis returned from his one

week of leave, it was acceptable for his to schedule the service call the following week, assuming

that technicians were available.

Mr. Matheison, who is not based in Massachusetts, was in Massachusetts the week

before Mr. Travis's baby was born.  Mr. Mathieson was supposed to be training Mr. Travis, but

they basically spent a short amount of time together at breakfast or lunch.  Mr. Mathieson kept

trying to assign Mr. Travis assignments for the next week, and Mr. Travis kept explaining that he

was taking the next week off because his fiancé was having a baby by C-section on Monday,

March 28th.  Mr. Mathieson was visibly frustrated that Mr. Travis was taking an entire week off

from work.

Mr. Travis' fiancé gave birth via C-section on Monday, March 28th.  On Information and

belief, the Company did not transfer anyone to cover the New England territory while Mr. Travis

was on his one week leave of absence.  On information and belief, Mr. Mathieson did not cover

Mr. Travis' work related phone calls or emails while he was on his one week leave of absence.

Iliya Kolev ("Mr. Kolev"), a Company Account Manager, called Mr. Travis' work cell phone the

same day that his fiancé delivered the baby on March 28th. Mr. Kolev called Mr. Travis on his

personal cell phone on March 29th, the day after the baby was born, while Mr. Travis was on his

one week leave of absence. Mr. Kolev had Mr. Travis' personal cell phone number because Mr.

Travis had to use his personal cell phone when he first started because the Company did not

have a business cell phone ready for him when he started. Mr. Mathieson kept assigning Mr.

Travis work assignments despite the fact that he was out on a one week leave of absence.

Mr. Travis returned to work on April 4, 2022. Mr. Travis was inundated with a backlog

because Mr. Mathieson had assigned work for him while he was on his one week leave of

absence. Even though Mr. Mathieson had agreed to allow Mr. Travis to work remotely, he

began to assign Mr. Travis jobs that required that he travel. When Mr. Travis reminded Mr.

Mathieson that he was supposed to be working remotely while his fiancé recovered from the C-

section, Mr. Mathieson angrily responded that Mr. Travis was not acting like a dedicated

employee who cared about the customers. Mr. Travis was terminated on April 20th, just 16 days

after he returned from his one week unpaid leave of absence.

I.    *Legal Standard*

A party seeking preliminary injunctive relief must establish: (1) the likelihood of

prevailing on the merits of the claim; (2) irreparable injury in the absence of injunctive relief; the

hard to the plaintiff outweighs the harm to the defendant, and (4) the public interest will be

4

served by the issuance of the injunction. T&D Video, Inc. v. City of Revere, 423 Mass. 577, 580 (1996).

II.    *Mr. Travis Has A Strong Likelihood of Succeeding On The Merits*

MGL c. 175M, § 9(c) states: "Any negative change in the seniority, status, employment benefits, pay or other terms or conditions of employment of an employee which occurs any time during a leave taken by an employee under this chapter, or during the 6 month period following an employee's leave or restoration to a position pursuant to this section, or of an employee who has participated in proceedings or inquiries pursuant to this section within 6 months of the termination of proceedings shall be presumed to be retaliation under this section. Such presumption shall be rebutted only by clear and convincing evidence that such employer's action was not retaliation against the employee and that the employer had sufficient independent justification for taking such action and would have in fact taken such action in the same manner and at the same time the action was taken, regardless of the employee's use of leave, restoration to a position or participation in proceedings or inquiries as described in this subsection. An employer found to have threatened, coerced or taken reprisal against any employee pursuant to this subsection shall rescind any adverse alteration in the terms of employment for such employee and shall offer reinstatement to any terminated employee and shall also be liable in an action brought under subsection (d)." (emphasis added).

Mr. Travis was pressured into not applying for 12 weeks of PFML.  Even after he acquiesced by agreeing to a one week unpaid leave of absence, the Company still penalized Mr. Travis by calling him during his one week of leave, scheduling him for work during his one week of leave, recanting its promise to allow him to work remotely after his one week of unpaid leave,

5

and terminating him just <u>16 days</u> after he returned from his one week leave. The statue states that there is a legal presumption that any termination within six (6) months of the employee's return is retaliatory. Here, the Defendant fired the Plaintiff even before he returned to work.

Furthermore, there is no rational justification for the decision. Mr. Travis had years of experience performing this type of work. In fact, he was overqualified for the position. During his first month of employment, he was able to quickly get up to speed and demonstrate his competence and ability to perform the job.

On information and belief, the Company cannot point to a single document in Mr. Travis' personnel file that would justify a termination decision. The Company cannot produce a single document that demonstrates or even implies that Mr. Travis was notified that his position was in jeopardy. The Company will be unable to rebut the presumption of retaliation because there is no clear and convincing evidence of an independent justification for the termination decision.

### III.    *Mr. Travis Will Suffer Irreparable Injury*

Mr. Travis and his fiancé just had a baby. Mr. Travis is the proverbial breadwinner for the family. The termination decision threatens the family's ability to handle its financial obligations. Furthermore, the Company's inability to articulate a business reason to justify the termination decision prevents Mr. Travis from proffering a plausible explanation to prospective employers after just a few months of employment. It is impossible to gauge the financial impact on Mr.

Travis and his family, and it is also impossible to gauge the psychological impact that this will

have on Mr. Travis and his family.

IV.     *The Damage To Mr. Travis Is Worse Than Any Damage To The Company*

If this Court ordered the Defendant to reinstate Mr. Travis, then the Company would be

"stuck" with a competent employee.   Simply put, there is no 'damage' to the Company if Mr.

Travis is reinstated.

V.      *There Is A Strong Public Interest In Enforcing The Newly Enacted PFML*

In January 2021, Massachusetts because the seventh (7th) state in the nation to offer paid

leave to employees.  Paid family leave benefits employees because it allows parents to bond

with their babies, supports the mental health and well-being of the parents and reduces the

financial stress and insecurity.  Paid family leave also benefits employers are studies show that

paid leave boosts employee morale and helps improve employee retention as employees are

more likely to return to work after a paid leave.

The Legislature explicitly provided for equitable relief.  Section 9(d) states:  "An employee

or former employee aggrieved by a violation of this section or subsections (e) and (f) of section 2

of this chapter may, not more than 3 years after the violation occurs, institute a civil action in the

superior court. A party to the action shall be entitled to a jury trial. All remedies available in

common law tort actions shall be available to prevailing plaintiffs and shall be in addition to any

legal or equitable relief provided in this section. The court may: (i) issue temporary restraining

orders or preliminary or permanent injunctions to restrain continued violations of this section;

(ii) reinstate the employee to the same position held before the violation or to an equivalent

position; (iii) reinstate full fringe benefits and seniority rights to the employee; (iv) compensate

the employee for 3 times the lost wages, benefits and other remuneration and the interest thereon; and (v) order payment by the employer of reasonable costs and attorneys' fees." Fidelity to the legislative intent requires that this Court consider granting Mr. Travis the equitable relief explicitly set forth in the statute.

### CONCLUSION

For the reasons set forth above, the Plaintiff's Emergency Motion for Injunctive Relief should be allowed.

DATED:  May 6, 2022

Respectfully submitted,
The Plaintiff,
By his attorney,

John W. Davis (BBO #648399)
Davis & Davis, P.C.
352 Park Street
North Reading, MA 01864
(978) 248-8750
jdavis@davisanddavispc.com

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.
                                                    SUPERIOR COURT DEPT.
                                                    CIVIL ACTION NO. _____

BRANDON TRAVIS,                         )
          Plaintiff,                    )
                                        )
v.                                      )
                                        )
HUB PARKING TECHNOLOGY USA INC.         )
          Defendant.                    )

## AFFIDAVIT OF BRANDON TRAVIS IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR EQUITABLE RELIEF (REINSTATEMENT)

I, Brandon Travis, hereby depose and state as follows:

1.  I have worked in a supervisor or manager capacity for more than a decade with a history of success in field service.

2.  Even though I felt that I was overqualified for the Field Service Supervisor position at Hub Parking Technology USA Inc. ("the Company"), I was interested in the position and I applied in or about early February 2022.

3.  I was offered the position, accepted the offer, and started on February 21, 2022.

4.  Even though I had to learn Company-specific policies and procedures, the job was similar to past positions and I was able to quickly get up to speed.

5.  For the first month, the Company seemed pleased with my performance and there were never any issues or concerns raised with me.

6.  When I started working for the Company, my fiancé was 8 months pregnant.

7.  After I started working for the Company, my fiancé told me that she was able to get 12 weeks of paid time off from work due to a new law in Massachusetts. She said that I may also be eligible even though I was a relatively new employee with the Company.

8. I contacted the Company's HR department, which is not in Massachusetts, to inquire about adding the baby to our insurance and to inquire about PFML.

9. The HR employee seemed to have no familiarity or understanding of the PFML. However, she did agree to text me the Company's EIN so that I could fill out the PFML application online.

10. Based upon the disappointing experience with HR, I approached my boss, Chuck Mathieson, who also did not know any details of PFML.

11. When I explained that I would be eligible for 12 weeks of paid time off, his immediate reaction was to state that I just started the position, the New England area was already under-staffed and it would be a bad time to take an extended leave. I inferred that he was politely and subtly threatening my job.

12. Out of fear of losing my job, I offered to take a one week of unpaid leave, if Mr. Mathieson would allow me to work remotely thereafter because my fiancé would still require my help for herself and the baby after having a C-section.

13. Mr. Mathieson stated that my proposal would work.

14. However, the week before the baby was born, Mr. Mathieson kept scheduling assignments for the following week. When I reminded him that I was taking the week off, he seemed irritated and kept claiming that he 'forgot' that I was out for 'an entire week'.

15. The baby was born on Monday, March 28th.

16. That same day, Iliya Kolev, a Company Account Manager, tried calling me on my business cell phone. I recognized the number from the Caller ID.

17. The day after the baby was born, Mr. Kolev called my personal cell phone number.

18. I returned to work the following Monday, as agreed. Mr. Mathieson then began complaining that service technicians were out, so I had to travel to client sites.

19. I reminded him that I had already agreed to forestall filing my PFML application for 12 weeks of paid leave based upon his willingness to allow me to work remotely.

20. Mr. Mathieson was clearly irritated with me, suggesting that I was not dedicated and that I did not care about my job or the Company's clients.

21. I was fired on April 20th.

22. I am more than qualified to perform the job.  I am convinced that I was fired because the Company regarded my newborn child to be a nuisance and a burden.  The Company fired me because I was purportedly not a dedicated employee because I wanted to help my fiancé and spend time with my newborn son.

I certify under the penalty of perjury that the foregoing statements made by me are true and accurate.

Dated:  May 4, 2022

Brandon Travis

3

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                    SUPERIOR COURT DEPT.
                                                 CIVIL ACTION NO.: _____

_____
                                    )
BRANDON TRAVIS,                     )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )
HUB PARKING TECHNOLOGY USA INC.     )
        Defendant.                  )
_____)

<u>**MOTION FOR SHORT ORDRER OF NOTICE**</u>

Now Comes the Plaintiff, Brandon Travis, and moves this Court to schedule a hearing on

the Plaintiff's Emergency Motion for Equitable Relief in the above-captioned matter for 2:00

p.m., Monday, May 16, 2022.  As grounds therefore, the Plaintiff states that granting the Short

Order of Notice will allow the Plaintiff to seek reinstatement pursuant to the PFML (MGL c.

175M, § 9).

Wherefore, undersigned counsel for the Plaintiff requests this Court to allow the within

Motion.


                                    Respectfully submitted,
                                    The Plaintiff,
                                    By his attorney,



                                    _____
                                    John W. Davis (BBO #648399)
                                    Davis & Davis, P.C.
                                    352 Park Street
                                    North Reading, MA 01864
                                    (978) 248-8750
                                    jdavis@davisanddavispc.com

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                      SUPERIOR COURT DEPT.
                                                   CIVIL ACTION NO.: _____

---

BRANDON TRAVIS,
        Plaintiff,                          )
                                            )
                                            )
                                            )
v.                                          )
                                            )
                                            )
HUB PARKING TECHNOLOGY USA INC.             )
        Defendant.                          )

---

## MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER UNDER RULE 4C

The Plaintiff moves pursuant to Mass.R.Civ.P. 4C that this Court appoint Constable Mark S.

Ianuzzi of Ianuzzi & Associates, qualified and knowledgeable persons in the service of all court

process, including but not limited to, any and all pre-judgment and post judgment process. The

undersigned swears that this individual is over eighteen years of age or over and is not a party in

this case.

Respectfully submitted,
The Plaintiff,
By his attorney,

John W. Davis (BBO #648399)
Davis & Davis, P.C.
352 Park Street
North Reading, MA 01864
(978) 248-8750
jdavis@davisanddavispc.com

Superior Court - Plymouth
Docket Number 2283CV00329
5/18/2022

# COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPT.
CIVIL ACTION NO.: 2283CV00329

BRANDON TRAVIS,
    Plaintiff,

v.

HUB PARKING TECHNOLOGY USA INC.,
    Defendant.

)
)
)
)
)
)
)
)
)

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

MAY 1 8 2022

Clerk of Court

## NOTICE OF APPEARANCE

To the Clerk of the Above-Named Court:

    Kindly enter my appearance as counsel for the Plaintiff, Brandon Travis, in the above-captioned matter.

        Respectfully submitted,

Burhan Mahmud (BBO# 707441)
Davis & Davis, P.C.
352 Park Street, Suite 202
North Reading, MA 01864
(978) 248-8750
bmahmud@davisanddavispc.com

 **RECEIVED**     5/18/2022

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                 SUPERIOR COURT DEPT.
                                              C.A. NO. 2283CV00329

|  |  |
|---|---|
| BRANDON TRAVIS, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | ) |
| HUB PARKING TECHNOLOGY USA INC., | ) |
|  | ) |
|     Defendant. | ) |

## <u>EMERGENCY MOTION TO CONTINUE HEARING</u>

NOW COMES the defendant, Hub Parking Technology USA, Inc. ("Hub Parking"), through its counsel, Daniel R. Sonneborn, in the above-referenced matter and moves this Honorable Court to continue the hearing on Plaintiff's Emergency Motion for Equitable Relief under Mass. Gen. Laws, c. 175M, §9(d), presently scheduled for May 18, 2022, to Monday, June 6, 2022 at 2:00 P.M., or the earliest date thereafter that the Court is available.

As grounds for this Motion, Hub Parking says that it is domiciled in Warrendale, Pennsylvania and although its resident agent in Massachusetts, National Registered Agents, was served on May 11, 2022, its President and Director of Human Resources were not made aware of this lawsuit until Monday, May 16, 2022, when they returned from working for the past two weeks at Hub Parking's headquarters in Italy. Hub Parking's outside counsel was immediately contacted, and counsel in turn spoke with plaintiff's counsel regarding a potential continuance of the matter. At the same time, Hub Parking retained the undersigned counsel as local counsel in this matter. Plaintiff's counsel initially agreed to a continuance of today's hearing if the hearing could be held on May 25, 26, 27, or 30, 2022. Hub Parking's counsel contacted the clerk's

office, which said those dates were not available (with May 30, 2022 being Memorial Day), but offered June 6, 7, 8 or 9, 2022 at 2:00 P.M. Hub Parking's counsel sought approval to file an assented-to motion to continue today's hearing to one of the dates provided by the clerk's office, but Plaintiff's counsel would not agree to a hearing for the first week or June instead of the last week of May. As such, Hub Parking files this emergency motion so that it may have further time to investigate the Plaintiff's allegations and respond accordingly.

WHEREFORE, Defendant Hub Parking Technology USA, Inc. respectfully moves that the Court continue the Motion hearing scheduled for May 18, 2022 to June 6, 2022.

## <u>CERTIFICATION PURSUANT TO SUPERIOR COURT RULE 9A(d)(1)</u>

Counsel for Defendant Hub Parking Technology USA, Inc. states that he made a good faith effort to contact and confer with all parties regarding the subject of this motion, but Plaintiff does not assent to the relief sought, as outlined above.

<table>
<tr><td></td><td>Respectfully submitted,<br>The Defendant,<br><b>Hub Parking Technology USA, Inc.,</b><br>By its attorney,</td></tr>
<tr><td>May 18, 2022</td><td><i>/s/ Daniel R. Sonneborn</i><br>Daniel R. Sonneborn, BBO# 679229<br>Preti Flaherty Beliveau & Pachios LLP<br>60 State Street, Suite 1100<br>Boston, MA  02109<br>dsonneborn@preti.com<br>(617) 226-3800</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2022, I served a copy of the foregoing pleading via email

and first-class mail, properly addressed as follows:

John W. Davis, Esq.                    Frank C. Botta, Esq.
Burhan Mahmud, Esq.                    The Lynch Law Group
Davis & Davis, P.C.                    501 Smith Drive, Suite 3
352 Park Street                        Cranberry Township, PA 16066
North Reading, MA  01864               fbotta@lynchlaw-group.com>
jdavis@davisanddavispc.com
bmahmud@davisanddavispc.com

                                       */s/ Daniel R. Sonneborn*
                                       Daniel R. Sonneborn

Date Filed 5/18/2022 10:42 AM
Superior Court - Plymouth
Docket Number 2283CV00329

**RECEIVED**   5/18/2022

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                    SUPERIOR COURT DEPT.
C.A. NO. 2283CV00329

| | |
|---|---|
| BRANDON TRAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| HUB PARKING TECHNOLOGY USA INC., | ) |
| | ) |
| Defendant. | ) |

## EMERGENCY MOTION TO CONTINUE HEARING

NOW COMES the defendant, Hub Parking Technology USA, Inc. ("Hub Parking"),

through its counsel, Daniel R. Sonneborn, in the above-referenced matter and moves this

Honorable Court to continue the hearing on Plaintiff's Emergency Motion for Equitable Relief

under Mass. Gen. Laws, c. 175M, §9(d), presently scheduled for May 18, 2022, to Monday, June

6, 2022 at 2:00 P.M., or the earliest date thereafter that the Court is available.

As grounds for this Motion, Hub Parking says that it is domiciled in Warrendale,

Pennsylvania and although its resident agent in Massachusetts, National Registered Agents, was

served on May 11, 2022, its President and Director of Human Resources were not made aware of

this lawsuit until Monday, May 16, 2022, when they returned from working for the past two

weeks at Hub Parking's headquarters in Italy. Hub Parking's outside counsel was immediately

contacted, and counsel in turn spoke with plaintiff's counsel regarding a potential continuance of

the matter. At the same time, Hub Parking retained the undersigned counsel as local counsel in

this matter. Plaintiff's counsel initially agreed to a continuance of today's hearing if the hearing

could be held on May 25, 26, 27, or 30, 2022. Hub Parking's counsel contacted the clerk's

19024217.1